**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3565-16T3

CODDINGTON COMMUNITIES, LLC,

      Plaintiff-Respondent,

v.

MCDONFEN, LLC,

      Defendant,

and

KARL A. FENSKE,

      Defendant-Appellant.

_____

Argued October 4, 2018 – Decided November 27, 2018

Before Judges Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. DC-000276-17.

Karl A. Fenske, appellant, argued the cause pro se.

Anthony J. Sposaro argued the cause for respondent.

PER CURIAM

Defendant Karl A. Fenske appeals from an April 13, 2017, judgment requiring him to pay plaintiff Coddington Communities, LLC $4730.38 in unreturned deposit money from a failed real estate deal. We affirm.

We discern the following facts from the record. Fenske's parents owned a property in Chatham Township. In 1999, they conveyed the property to McDonfen Group, LLC, whose members included: Fenske, his parents' estates, and his siblings.[1]

Sam Gershwin and John Sims expressed interest in purchasing the McDonfen Group property and reached an agreement with Fenske. The written agreement executed by the parties was between "McDonfen, L.L.C."[2] and "Coddington Communities, LLC and Builder Marketing Services, or Coddington Real Estate Services." Gershwin was a member of Coddington Communities, LLC. Sims was a member of Builder Marketing Services. At trial, both Gershwin and Sims stated they were partners in this deal, but Sims explained "[t]here was no legal entity between Mr. Gershwin and myself."

---

[1] Fenske was listed as McDonfen Group LLC's agent for service of process. However, McDonfen Group, LLC had its charter revoked on November 16, 2012, for failure to file an annual report for two consecutive years.

[2] It is not clear that "McDonfen, L.L.C." is an actual entity.

A-3565-16T3

On October 13, 2015, Fenske drafted a real estate agreement and sent it to Sims for review. Several essential terms were missing, including the type of deed defendants intended to convey. Sims wrote Fenske an email stating he and Gershwin "were okay with the agreement" but had questions and comments on certain provisions and sent Fenske back a marked-up copy. Fenske revised the agreement, signed it, and sent it back on January 8, 2016. The revised agreement was signed by Sims on January 14, 2016, and by Gershwin on February 16, 2016. "Coddington Communities, LLC" appears below Gershwin's signature, and no designations appear below Sims's or Fenske's signatures.

Two provisions of the parties' written contract are at issue here. First, the parties agreed, upon full execution of the agreement, to a 120-day due diligence period to allow plaintiff sufficient time to conduct an environmental study on the property. During this period, plaintiff was entitled to terminate the contract for any reason. Second, plaintiff agreed to pay a $25,000 deposit upon execution of the contract and a second $25,000 deposit following zoning approval. The initial $25,000 deposit was to be used for carrying costs of the property and was releasable only after the expiration of the 120-day due diligence period.

Sims and Gershwin paid the initial $25,000 deposit in two, equal installments on February 26, 2016, and April 19, 2016, respectively. On May

A-3565-16T3

19, 2016, Sims emailed Fenske with the results of the environmental study and concluded the property's wetland characteristics rendered it undevelopable. On May 23, 2016, Sims informed Fenske he and Gershwin were terminating the deal. Sims requested return of the initial $25,000 deposit. On August 19, 2016, Fenske provided Sims and Gershwin each with a check for $10,181.76, for a total of $20,363.52. Fenske refused to return $4636.48 he used for taxes and maintenance on the property, and plaintiff sued.

The essential question before the trial court and now on appeal is when the parties entered a binding contract thereby triggering the due diligence period. During the bench trial, Fenske testified he believed the 120-day due diligence period began on October 13, 2015, when he circulated the draft agreement, therefore he was entitled to spend the initial deposit. Sims testified he believed the initial deposit was not due until after Gershwin signed the agreement on February 16, 2016. Gershwin testified he also understood the due diligence period began on February 16, 2016.

On April 13, 2017, the trial judge, in an oral decision, granted judgment for plaintiff. He found the draft contract circulated on October 13, 2015, represented a period of negotiation and not a binding contract. The October 13, 2015, version had several highlighted areas, hand-written questions, no

4

signatures, and several missing provisions, such as the type of deed to be conveyed. Conversely, the trial judge found the document dated February 16, 2016, was a fully executed contract because there were no highlighted areas, the type of deed was included, a prospective closing date was added, and Fenske, Gershwin, and Sims all signed the document. Because the final paragraph of the contract states "[t]his contract is binding upon all parties who sign it and all who succeed to their rights and responsibilities," the trial judge found Fenske, as drafter, knew the contract was not binding until all parties signed it. Thus, the trial judge found unpersuasive defendant's argument a contract was formed on October 13, 2015, or on January 14, 2016, and instead held the contract was fully executed on February 16, 2016. The trial judge also questioned Fenske's legal authority to enter into a contract on behalf of McDonfen Group, L.L.C., because he did not sign on behalf of the LLC and there was an open question whether the LLC was still in existence. Nevertheless, the trial judge found the contract satisfied the statute of frauds because it adequately described the property to be sold and was signed by Fenske as the party against whom the contract was to be enforced.

Our review of a bench trial is limited. "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and

5

credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974) (citation omitted). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonable credible evidence as to offend the interests of justice." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quotation and citation omitted). However, we review conclusions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, Fenske argues a contract was formed on October 13, 2015. Alternatively, Fenske contends Sims and Gershwin entered into a partnership and when Sims signed the agreement on January 14, 2016, he also bound Gershwin. Neither point has merit.

A legal and enforceable contract requires proof of: (1) a meeting of the minds and (2) mutual assent between the parties. Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953). A meeting of the minds is "evidenced by each side's express agreement to every term of the contract." State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 612 (App. Div. 2006). Mutual assent can be shown "by an offer and an acceptance either in words or

6

by conduct" and the offeree's assent must be "unequivocally shown." Johnson & Johnson, 11 N.J. at 538.

Our review of the record finds the trial judge's conclusion the October 13, 2015, iteration of the contract was mere bargaining is supported by substantial evidence. The first draft Fenske circulated was incomplete and missing essential terms. Sims's response posed several questions and comments the parties needed to resolve before coming to a final agreement. Moreover, none of the parties signed the October 13, 2015, draft. Nowhere in this period of bargaining was there evidence Sims and Gershwin accepted Fenske's offer.

Nor was a contract formed on January 14, 2016, when Sims signed the deal. We are not persuaded by Fenske's conclusory statement that Sims and Gershwin were partners with legal authority to bind the other.

Generally, a partnership is formed when two persons associate "carry on as co-owners a business for profit." N.J.S.A. 42:1A-10(a). In a partnership, "[e]ach partner is an agent of the partnership for the purpose of its business," "unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority." N.J.S.A. 42:1A-13(a). The burden of proving a partnership existed resides with the party alleging its

existence. <u>Fenwick v. Unemployment Comp. Comm'n</u>, 133 N.J.L. 295, 300 (E. & A. 1945).

Fenske did not carry his burden to show Sims and Gershwin entered into a partnership. His conclusory statements are insufficient. Although Gershwin testified "Mr. Sims and I were partners in the purchasing entity of this deal," both he and Sims testified they were entering the deal on behalf of Coddington Communities and Builder Marketing Services, respectively, not in their individual capacities. Even if Sims and Gershwin were in partnership, we defer to the trial judge's finding that Fenske knew both Sims and Gershwin had to sign the contract before it was enforceable. Thus, Fenske knew Sims had no authority to bind Gershwin to the deal without Gershwin's signature, and the trial court was correct in concluding a contract was formed on February 16, 2016.

We do not address defendant's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3565-16T3